**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROLANDO CHACON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:24-cv-02242 |
| v. | **CLASS ACTION COMPLAINT** |
| HY CITE ENTERPRISES, LLC d/b/a ROYAL PRESTIGE and DOES 1-10, inclusive, | **JURY DEMANDED** |
| Defendants. | |

Now comes the Plaintiff, ROLANDO CHACON ("Plaintiff"), by and through his attorneys, and for his class action Complaint against the Defendants, HY CITE ENTERPRISES, LLC d/b/a ROYAL PRESTIGE ("Royal Prestige") and DOES 1-10 (collectively, "Defendants"), inclusive, Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1.      Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., ("TCPA") and related regulations. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      The TCPA was designed to prevent automated telephone calls like the ones described herein, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer

complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.    In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on the TCPA's purpose).

4.    Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13.

5.    In a recent decision, the Supreme Court interpreted the term "automatic telephone dialing system" and held that "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator **or** to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

6.    In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to

pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id*. at 1171-72, fn. 7.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under a law of the United States, the TCPA.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

9. Plaintiff is an individual who was at all relevant times residing in Chicago, Illinois.

10. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff was physically within this District at the time he received the text messages at issue from Defendants.

12. On information and belief, Defendant Royal Prestige is a limited liability company of the State of Wisconsin, which is registered with the Secretary of State to do business in Illinois, and whose principal place of business is located in Middleton, Wisconsin.

13. On information and belief, at all times relevant hereto, Royal Prestige was engaged in the wholesale marketing and distribution of cookware, kitchen appliances, cutlery, tableware, and water and air filtration devices.

14. Royal Prestige is a "person" as defined by 47 U.S.C. § 153(39).

15. On information and belief, at all times relevant hereto, Royal Prestige conducted business within this District.

16. The true names and capacities of the Defendants sued herein as DOES 1-10 are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of

the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend his Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

17.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## **FACTUAL ALLEGATIONS**

18.     During or about February or March of 2022, Defendants began placing unsolicited automated telephone calls, and sending unsolicited automated text messages, to Plaintiff's cellular telephone number ending in -3032.

19.     At the time of Defendants' initial call, Plaintiff's cellular telephone number ending in -3032 had been registered on the National Do-Not-Call Registry for over 30 days. Plaintiff's cellular telephone number ending in -3032 has remained registered on the National Do-Not-Call Registry at all times thereafter.

20.     During Defendants' initial call, Plaintiff asked Defendants' representative to stop calling him and remove his number from all of their call lists.

21.     Despite Plaintiff's cellular phone number having been registered on the National Do-Not-Call Registry, and Plaintiff's request that Defendants cease calling him, Defendants continued to place calls and send text messages to Plaintiff, including at least three or four times after he demanded to be removed from Defendants' call lists.

22.     Defendants also began sending Plaintiff SMS text messages after Plaintiff had requested to be placed on Defendants' internal do-not-call list.

23.     For example, Defendants sent Plaintiff one such message on or about April 3, 2022, which stated, in part, "Hello, I'm Seydi, a representative from Royal Prestige and your number was received from a friend of yours. I wanted to know if you were interested in letting me come in and show you our products. For example our specialty water filter that makes your water taste so refreshing. I will also be bringing you a gift."

24.     When Plaintiff answered Defendants' calls, he experienced a pause before hearing a tone, after which a live representative would begin speaking, which is indicative of the use of a predictive dialer.

25.     Upon information and belief, the predictive dialer system used by Defendants to place their telephone calls to Plaintiff's cellular telephone has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

26.     Defendants' telephone calls to Plaintiff's cellular telephone were placed in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to place calls to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer using an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1), and as prohibited by 47 U.S.C. § 227(b)(1)(A).

27.     Based on the content and format of these text messages, Plaintiff alleges that they were sent via Defendants' SMS Blasting Platform, i.e., an ATDS as defined by 47 U.S.C. § 227(a)(1), and as prohibited by 47 U.S.C. § 227(b)(1)(A).

28.     Upon information and belief, the automated text messaging system used by Defendants to send the text messages has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

29.     The text messages sent to Plaintiff's cellular telephone were sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

30.     Defendants' predictive dialer platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers. Thus, a random or sequential number generator is used to both store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

31.     Defendants' texting platform also uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send out text messages *en masse*. Thus, a random or sequential number generator is used to both store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

32.     Plaintiffs' counsel have studied the code used to program other similarly functioning autodialers in the past, with the assistance of software engineers fluent in Java, and have found that such autodialers, when used in automated mode, execute code that relies upon random or sequential number generation to both store and produce numbers to be dialed by the

dialer. For instance, a common "parser" used in autodialers and SMS blasters integrates the following opensource Apache code into an autodialing dialing platform:

```
730     if (!this.recordList.isEmpty()) {

731     this.recordNumber++;

732     final String comment = sb == null ? null : sb.toString();

733     result=newCSVRecord(this,this.recordList.toArray(Constants.E
MPTY_STRING_ARRAY), comment,

734             this.recordNumber, startCharPosition);

735     }

736     return result;

737 }
```

33.     These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention whatsoever. The sequential number generator in the code above is executed in the process of mass predictive dialing. The program cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

34.     Plaintiff alleges that Defendants used a dialing system with the similar capacity to autodial numbers as shown above. Functionally, that is simply how predictive dialer systems and text blasting systems work. They rely on random or sequential number generators to instruct the data set to produce telephone numbers to the dialer. Without this key component, a dialing campaign would require an agent to manually place the call, through organic decision making, or

as was the case in *Facebook, Inc. v. Duguid*, through some other organic one-to-one triggering event that instructs the dialer to place the call.

35.     Plaintiff will not be able to demonstrate whether the code for Defendants' dialing system contains such random or sequential number generators without discovery and obtaining the code for the dialing platform. Plaintiff makes these allegations on information and belief based on the nature of the calls and text messages he received, and the fact that all the messages were of a prewritten one-size-fits-all form, which are indicia that they were autodialed with a predictive dialer and a SMS blaster.

36.     The problem with these known realities is that because Plaintiff does not and could not ever have access to Defendants' proprietary code, which is in Defendants' sole possession, Plaintiff cannot allege with any more specificity that the system's code contains such language. However, based on detailed discussions with experts and years of litigation and expertise surrounding such technology, Plaintiff, and his counsel, have a legitimate and sufficient good faith basis to make these allegations, and assert that if the systems are a traditional predictive dialer platform and a traditional text blasting platform as alleged, *then they will have some variation on the coding that is described herein*, which will undoubtedly include either random or sequential number generators that are being executed in conjunction with storing and dialing the telephone numbers, including the dialing of Plaintiff's telephone number.

37.     The following is a description, in plain English, of how an automated dialer typically operates: A dialer operator accesses a database of consumer contact information, which is typically contained in a text delimited file, either in a CSV file, text file, Microsoft Excel, or Microsoft Access file. In essence, this is a spreadsheet, containing rows and columns of data, which includes telephone numbers. The operator will load this data set into the dialing platform. The

dialing system will cut the data set into individual lines, unique to each telephone number with an assigned row using a parser. Parsers will separate the data, and then index the telephone numbers using either random or sequential number generators, but most commonly sequential number generators. The program will then store the telephone number using that number generator. The data is stored in temporary cache or RAM memory, to be accessed by the dialer platform thereafter. A random or sequential number generator is programmed to select and produce, automatically, without any organic triggering event by a human being, the telephone numbers, i.e. in accessing them from storage. Once the number generator corresponds to a matching number in the stored list, that telephone number will be "produced" from storage to the dialer, which then automatically dials that telephone number. Thus, predictive dialers and SMS blasters have the capacity to use random or sequential number generators to both store and produce the telephone number to be automatically dialed by the dialing program, without human intervention.

38. To illustrate this using a real-world example that was provided to undersigned counsel by a software engineer who is fluent in Java and has reviewed dialer code, imagine a list of numbers as a lengthy sheet of lined notebook paper. A parser cuts this into strips, and stores it in a paper tray, which is attached to a scanner. Each strip of paper has a row number, and a telephone number. The scanner uses a program to generate numbers, either sequentially or randomly. That generator is hooked to the paper feed, which instructs the scanner to match the generated number, to the corresponding strip of paper in the tray, and then scan that telephone number from the stored list, through the scanner, and out the other side, at which time the scanner is dialing the telephone number on that strip of paper. Now imagine a scanner that accomplishes this with a tray containing thousands of pages of paper in the blink of an eye. Once the tray is empty, the dialing campaign is complete.

39.     No human intervention whatsoever exists in his process other than pre-programming the parameters of the campaign, i.e. by inputting the numbers and selecting the times/dates that the campaign will take place.

40.     The telephone number that Defendants or their agent(s) texted is assigned to a cellular telephone service for which Plaintiff incurs charges for incoming calls and texts pursuant to 47 U.S.C. § 227(b)(1).

41.     Defendants' calls and text messages constituted calls that were not for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A)(i).

42.     Defendants and their agents never received Plaintiff's prior express consent to receive unsolicited calls and text messages, pursuant to 47 U.S.C. § 227(b)(1)(A).

43.     Such calls and text messages constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2), as they were attempts to promote or sell Royal Prestige's products and services.

44.     Plaintiff also alleges that Defendants' calls and text messages constitute violations of 47 C.F.R. 64.1200(c)(2), because Plaintiff's phone number was registered on the National Do-Not-Call Registry prior to Defendants' telephone call and text message solicitations.

45.     These calls and text messages by Defendants, or their agent(s), violated 47 U.S.C. § 227(b)(1).

46.     Based upon Plaintiff's personal experience of being called and messaged by Defendants after being on the National Do-Not-Call list for years prior to Defendants' initial call, and at all relevant times, Plaintiff also alleges, on information and belief, that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations or for maintaining a list of persons who request not to receive telemarketing calls

made by or on behalf of Defendants, in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including 47 C.F.R. 64.1200(d).

47. Defendants' unsolicited telemarketing calls and text messages were a nuisance to Plaintiff.

48. Plaintiff suffered a concrete and particularized injuries in fact as a result of the unsolicited telemarketing calls he received from Defendants. The calls invaded Plaintiff's privacy, causing annoyance, aggravation, inconvenience, frustration, and emotional distress, wasting his time, consuming use of his telephone line without authorization, and otherwise intruding into his personal affairs without permission. The calls also constituted a form of the precise harm that Congress was attempting to prohibit with the enactment of the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by telemarketing calls placed without consent. Plaintiff actually suffered this precise injury by receiving the unwanted telemarketing calls, and having his privacy invaded through a disturbance of his solitude and unwanted intrusion of his technology and personal space. Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## CLASS ALLEGATIONS

49. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "ATDS Class") defined as follows:

> All persons within the United States who received any solicitation/telemarketing calls or text messages from Defendants using an automatic telephone dialing system, which calls)were not made for emergency purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint through the date of class certification.

50. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "National Do-Not-Call Class") defined as follows:

> All persons within the United States whose telephone numbers were registered on the National Do-Not-Call Registry for at least 30 days, who received more than one call or text message within any twelve-month period placed by or on behalf of Defendants and which promoted Defendants' products or services, within the four years prior to the filing of this Complaint through the date of class certification.

51.  Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the following proposed class (the "Internal Do-Not-Call Class") defined as follows:

> All persons within the United States who requested that Defendants not place calls or send text messages to them, who received at least one such call or text messages made by or on behalf of Defendants more than 30 days after the date such request was made, within the four years prior to the filing of this Complaint through the date of class certification.

52.  The above-defined proposed classes are referred to herein a the "Classes."

53.  Defendants, their employees and agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes but believes the members of the Classes number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of the matter.

54.  The members of the Classes are so numerous that the individual joinder of all members is impractical. While the exact number and identities of the Classes' members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that all three of the Classes include thousands, if not tens of thousands of members. Plaintiff alleges that the putative class members may be ascertained by the records maintained by Defendant.

55.  This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of their individual members is impractical and

the disposition of their claims in the class action will provide substantial benefits both to the parties and the Court.

56.     Plaintiff and members of the ATDS Class were harmed by the acts of Defendants in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiff and the ATDS Class members via their cellular telephones by using automated calls and text messages, thereby causing Plaintiff and the ATDS Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the ATDS Class members previously paid, and invading the privacy of said Plaintiff and the ATDS Class members. Plaintiff and the ATDS Class members were damaged thereby.

57.     There is a well-defined community of interest in the questions of law and fact involved affecting the ATDS Class members. The questions of law and fact common to the ATDS Class predominate over questions which may affect individual ATDS Class members and include, but are not necessarily limited to, the following:

a.     Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendants or their agents placed any calls or sent any text messages (other than a message made for emergency purposes or made with the prior express consent of the called party) to an ATDS Class member using any automatic telephone dialing system, or artificial voice, to any telephone number assigned to a cellular phone service;

b.     Whether the ATDS Class members were damaged thereby, and the extent of damages for such violations; and

c.     Whether Defendants should be enjoined from engaging in such conduct in the future.

58.     As a person who received automated telephone calls and text messages from Defendants within four years prior to the filing of this lawsuit, who had not granted Defendants prior express consent to place such calls or send such messages to him, Plaintiff is asserting claims that are typical of the ATDS Class. Plaintiff will fairly and adequately represent and protect the interests of the ATDS Class in that Plaintiff has no interests antagonistic to any member of the ATDS Class.

59.     Plaintiff and members of the National Do-Not-Call Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and National Do-Not-Call Class members via their telephones for solicitation purposes, thereby invading the privacy of said Plaintiff and the National Do-Not-Call Class members whose telephone numbers were on the National Do-Not-Call Registry. Plaintiff and the National Do-Not-Call Class members were damaged thereby.

60.     There is a well-defined community of interest in the questions of law and fact involved affecting the National Do-Not-Call Class members. The questions of law and fact common to the DNC Class predominate over questions which may affect individual National Do-Not-Call Class members and include, but are not necessarily limited to, the following:

a.      Whether, within the four years prior to the filing of this Complaint through the date of class certification, Defendants or their agents placed more than one telemarketing/solicitation call or text messages to National Do-Not-Call Class members whose telephone numbers were on the National Do-Not-Call Registry;

b.      Whether Defendants maintain proper procedures and policies on the use of do-not-call lists, as required by 47 C.F.R. § 64.1200;

14

c.    Whether Plaintiff and the National Do-Not-Call Class members were damaged by Defendants' conduct, and the extent of damages for such violations; and

d.    Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

61.    As a person that received numerous solicitation calls and text messages from Defendants within a 12-month period, and whose phone number was registered on the National Do-Not-Call Registry, Plaintiff is asserting claims that are typical of the National Do-Not-Call Class. Plaintiff will fairly and adequately represent and protect the interests of the National Do-Not-Call Class in that Plaintiff has no interests antagonistic to any member of the National Do-Not-Call Class.

62.    Plaintiff and members of the Internal Do-Not-Call Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff and Internal Do-Not-Call Class members via their telephones for solicitation purposes, thereby invading the privacy of said Plaintiff and the Internal Do-Not-Call Class members who had requested to be placed on Defendants' internal do-not-call list. Plaintiff and the Internal Do-Not-Call Class members were damaged thereby.

63.    There is a well-defined community of interest in the questions of law and fact involved affecting the Internal Do-Not-Call Class members. The questions of law and fact common to the Internal Do-Not-Call Class predominate over questions which may affect individual Internal Do-Not-Call Class members and include, but are not necessarily limited to, the following:

a. Whether Defendants maintained a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1);

b. Whether Defendants train their employees and/or agents who are engaged in telemarketing on the existence and use of any do-not-call list, as required by 47 C.F.R. § 64.1200(d)(2);

c. Whether Defendants failed to place any Internal Do-Not-Call Class members who had requested not to receive further telemarketing calls on Defendants' do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(3);

d. Whether the Internal Do-Not-Call Class members were damaged thereby, and the extent of damages for such violations; and

e. Whether Defendants should be enjoined from engaging in such conduct in the future.

64. As a person who received numerous telemarketing calls and text messages from Defendants safter having requested that Defendants stop calling and texting him, Plaintiff is asserting claims that are typical of the Internal Do-Not-Call Class.

65. Plaintiff and the members of the Classes have suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct. Absent a class action, the Class members will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual member's claims, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

66. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

67.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of the Class members in individually controlling the prosecution of separate claims against Defendants are small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

68.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members not parties to such adjudications or that would substantially impair or impede the ability of such non-party members to protect their interests.

69.     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole.

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE ATDS CLASS**

70.      Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

71.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

72.     As a result of Defendants' negligent violations of 47 U.S.C. § 227(b), Plaintiff and the ATDS Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

17

73.     Plaintiff and the ATDS Class members are further entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT II**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE ATDS CLASS**

74.      Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

75.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(b).

76.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the ATDS Class members are entitled to an award of $1,500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

77.     Plaintiff and the ATDS Class members are further entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT III**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE NATIONAL DO-NOT-CALL CLASS**

78.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

79.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

80.     As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

81.     Plaintiff and the National Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT IV**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE NATIONAL DO-NOT-CALL CLASS**

82.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

83.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

84.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

85.     Plaintiff and the National Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT V**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE INTERNAL DO-NOT-CALL CLASS**

86.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

87.     The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

88.     As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff and the Internal Do-Not-Call Class members are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

89.     Plaintiff and the Internal Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT VI**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**ON BEHALF OF PLAINTIFF AND THE INTERNAL DO-NOT-CALL CLASS**

90.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if reiterated herein.

91.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227(c)(5).

92.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the Internal Do-Not-Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

93.     Plaintiff and the Internal Do-Not-Call Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

      a.      An order certifying the Classes and appointing Plaintiff as Representative of the Classes;

      b.      An order certifying the undersigned counsel as the Classes' Counsel;

      c.      An order requiring Defendants, at their own cost, to notify all ATDS, National Do-Not-Call, and Internal Do-Not-Call Class Members of the unlawful, unfair, deceptive, and unconscionable conduct herein;

      d.      Judgment against Defendants in the amount of $500.00 in statutory damages for each and every negligent violation of the TCPA by Defendants;

      e.      Judgment against Defendants in the amount of $1,500.00 in statutory damages for each and every knowing and/or willful violation of the TCPA by Defendants;

      f.      An order for injunctive relief prohibiting such conduct by Defendants in the future;

      g.      Judgment against Defendants for Plaintiff's court costs and other litigation costs; and

      h.      Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action which are so triable.

RESPECTFULLY SUBMITTED,

ROLANDO CHACON

By:    /s/ David B. Levin
          Attorney for Plaintiff
          Law Offices of Todd M. Friedman, P.C.
          707 Skokie Blvd., Suite 600
          Northbrook, Illinois 60062
          Phone: (224) 218-0882
          Fax: (866) 633-0228
          dlevin@toddflaw.com